## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIGEL ANTHONY BOWEN, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-5534 |
| | : | |
| LEHIGH COUNTY JAIL, *et al.*, | : | |
| *Defendants*. | : | |

### MEMORANDUM

**Pappert, J.**                                                    **October 23, 2024**

Nigel Anthony Bowen, a pretrial detainee[1] currently incarcerated at the Lehigh County Jail ("LCJ"), brings this civil action pursuant to 42 U.S.C. § 1983 based on allegations that staff at LCJ have failed to provide him with a medically necessary diet. Bowen seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Bowen leave to proceed *in forma pauperis*, dismiss his claims against some Defendants, and permit his remaining claims to proceed at this time.

I[2]

Bowen sues the following Defendants: (1) LCJ; (2) PrimeCare Medical Inc., the medical contractor at LCJ; (3) Cliff Knappenberger, identified as Investigator of Internal Affairs; (4) Janine Donate; (5) Kyle Russell; (6) Sarah Jarosz; (7) Douglas Mette, identified as a Treatment Supervisor; and (8) Carlos Gonzalez. (Compl. at 1.) Bowen alleges that "during [his] initial intake into [LCJ] [he] let the medical staff know

---

[1] *See Commonwealth v. Bowen*, CP-39-CR-0002430-2024 (C.P. Lehigh).

[2] The following allegations are taken from Bowen's Complaint. (ECF No. 2.) The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

of [his] medical issues including [his] allergies to egg and milk along with [his] prior diagnosis of diverticulitis," for which he previously received a colonoscopy. (Compl. at 4; *see also id.* at 3 (stating that, upon intake, Bowen "informed staff of [his] medical conditions" and "everything that [he] told them [was] entered and documented in the jail's records.").) However, when he was then housed in general population, he "received regular trays that included milk products, meats and products such as corn among other things that [he] can not consume." (*Id.* at 4.)

Bowen entered LCJ on June 20, 2024 and attempted to address these issues as early as June 29, 2024 by filing requests and sick call slips with the medical department, kitchen staff, and treatment supervisor. (*Id.* at 3.) He alleges that those who responded to his requests stated that they could not help him, and that each department placed responsibility for the issue on other departments, precluding resolution. (*Id.* at 3, 4.) At some point, Bowen's brother contacted LCJ on his behalf, following which Bowen received "neutral/meatless, low lactose meals." (*Id.* at 4.) He alleges, however, that he still "received food that could aggravate or flare up [his] diverticulitis." (*Id.*) The issues with his food trays have "become an almost daily reoccurrence." (*Id.* at 5.)

Bowen alleges that "[t]hese experiences have taken [a] toll on [his] mind and body tremendously," including worsening his mental health conditions and triggering "continuous night terrors." (*Id.* at 5.) Bowen seeks "correct meal trays for current and

future inmates with food allergies and/or food intolerances and religious food diets" as well as $14 million in damages.[3]  (*Id.* at 4.)

## II

The Court grants Bowen leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Bowen is proceeding

---

[3] Although Bowen requests damages and injunctive relief in part for "religious violations," (Compl. at 5), nothing in his Complaint suggests that his right to practice his religion has been infringed.  Accordingly, there is no basis for him to seek relief for religious matters.

[4] However, as Bowen is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

*pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).

III

Bowen brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Bowen's claims are best characterized as Fourteenth Amendment claims based on the Defendants' alleged failure to provide him with a diet that accommodates his medical needs and allergies.[5]

Prison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). "[T]his duty includes an obligation to provide a medically appropriate diet when necessary." *Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016) (citing cases). In the context of an alleged failure to provide such a diet, "[u]nconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and

---

[5] Because Bowen was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005).

alterations omitted).  To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Additionally, to establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  "Suits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  A supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

To state a § 1983 claim against a municipal entity or a municipal contractor such as PrimeCare, a plaintiff must allege that the municipality or contractor's policy or custom caused the violation of his constitutional rights. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). To allege an unconstitutional custom, a plaintiff must state facts from which it could be inferred that a decisionmaker acquiesced in a practice that essentially constitutes "standing operating procedure." *Bielevicz*, 915 F.3d at 850. A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Bowen has adequately alleged an objectively serious deprivation. He contends that he is allergic to eggs and milk and has been diagnosed with diverticulitis, for which he has received medical treatment, but that he nevertheless regularly (if not exclusively) received food trays containing foods to which he is allergic, which could

aggravate his medical condition, and which have "taken [a] toll on [his] mind and body tremendously." (Compl. at 5.) Similar allegations have been held to constitute an objectively serious deprivation under the Constitution. *See Jackson v. Gordon*, 145 F. App'x 774, 776 (3d Cir. 2005) (*per curiam*) (holding that an inmate stated an Eighth Amendment claim based on allegations "that he is severely lactose intolerant and allergic to eggs, that he was given inadequate meals, that in order for him to eat food, he has to get food from other inmates via a transportation device, which is disgusting and unsanitary, that this denial of a therapeutic diet is taking a serious toll on his health, and that he suffers constant hunger from the lack of proper nutrition." (cleaned up)); *see also Phillips v. Superintendent Chester SCI*, 739 F. App'x 125, 129 n.8 (3d Cir. 2018) (*per curiam*) (holding that a prisoner satisfied the objective component of constitutional analysis: "His continued receipt of food to which he was allergic, which allegedly caused him to lose 50 pounds and develop large, painful sores, seemingly posed a substantial risk of serious harm").

Bowen has also adequately alleged facts supporting an inference of deliberate indifference at this early stage of the litigation as to certain Defendants. He contends that he informed prison staff of his conditions upon intake but that he nevertheless was continuously fed food that he could not eat due to his allergies and medical condition. (Compl. at 3-4.) Bowen also alleges that he repeatedly sought to address and resolve the matter so that he could receive a proper diet, but that the medical department, kitchen staff, and treatment supervisor all pointed the finger at each other, such that the matter could not be resolved. The United States Court of Appeals for the Third Circuit has found similar allegations of systemic failure sufficient to support an

inference of deliberate indifference at the pleading stage when a prisoner alleged that he continuously received food to which he was allergic despite a medically prescribed diet and despite repeated efforts to remedy the matter:

> The District Court assumed for the sake of argument that Phillips had alleged facts satisfying the substantial risk of serious harm prong of the Eighth Amendment test, but it concluded that his claim failed on the deliberate indifference prong because he had not alleged any facts giving rise to an inference that any of the defendants participated in or in any way acquiesced in the provision of non-compliant foods to him. We disagree with this conclusion. Phillips's allegations indicate that (1) 11 Commonwealth Defendants (and, it seems, the John Doe "Head Kitchen Supervisor" in this case) were aware of the problems with his meal plan, (2) the meal plan caused him to suffer negative health effects that were significant and would be obvious to even the casual observer, and (3) nothing was done by these defendants to remedy the problems with his meal plan. Contrary to the District Court's conclusion, we conclude that these allegations, taken together, allow one to infer that these defendants acquiesced in the provision of non-compliant foods to Phillips.

*Phillips*, 739 F. App'x at 129 (cleaned up); *see also Carbajal v. Food Servs.*, No. 21-55631, 2022 WL 1132151, at *1 (9th Cir. Apr. 13, 2022) (reversing dismissal of claim where plaintiff alleged that "he was prescribed a diet for his medical condition and informed prison officials and medical personnel of his dietary needs, and the diet was refused"); *Jones v. Texas Dep't of Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018) ("Construed liberally, Jones's pleadings allege a pattern of knowing interferences with prescribed medical care for his diabetes [*i.e.*, a special diet], despite his multiple complaints and his official grievance, which were all essentially ignored. Contrary to the magistrate judge's conclusion, such conduct cannot be characterized as mere negligence."). *But see Vartinelli v. Aramark Corr. Servs., LLC*, 796 F. App'x 867, 869 (6th Cir. 2019) (affirming dismissal of inmate's claims based on allegations "that the prison's food contractor and its employees served him food to which he is allergic,

causing severe allergic reactions and lasting physical harm" because inmate did not adequately allege deliberate indifference on the part of each Defendant).

Bowen's Complaint reflects that certain Defendants were informed of his particular need for a medically appropriate diet but failed to take any action to remedy or investigate the situation.  The facts alleged in the Complaint, construed liberally, also support an inference that under the circumstances, these Defendants, by virtue of their positions, would have been aware of matters related to Bowen's diet and bore responsibility for it, either individually or collectively.  These include:  (1) Mette, a Supervisor for Treatment, who "responded to [Bowen's] requests by . . . putting blame on medical staff"; (2) Gonzalez, a Food Service Director whose staff repeatedly served Bowen incorrect meals; and (3) PrimeCare, the medical contractor whose staff failed to "correctly document [Bowen's] food allergies, intolerances and meal trays."  (Compl. at 1, 5.)  At this stage of the litigation, without discovery, Bowen cannot be expected to know which Defendant or department is ultimately responsible for failing to provide him with a medically appropriate diet.  Accordingly, the Court will direct service of Bowen's claims upon these Defendants.

In contrast, Bowen has not stated a claim against the remaining Defendants. Initially, a prison or jail, such as LCJ, is not legally a "person" subject to liability under § 1983, so LCJ is not an appropriate Defendant in this case.  *See Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-

6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Bowen's allegations against Defendants Russell, Donate, and Jarosz are insufficient to state a plausible claim against them because it appears these high-level officials were sued based solely on their positions at LCJ, rather than any facts from which their personal involvement, knowledge and acquiescence, or any other basis for liability could be inferred. *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Bowen has also failed to state a claim against Knappenberger, because he alleges in a conclusory manner that Knappenberger failed to properly handle his grievance, which is an insufficient basis for liability. *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (*per curiam*) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Simonton v. Tennis*, 437 F. App'x 60, 63 (3d Cir. 2011) (*per curiam*) ("The District Court correctly concluded that judgment on the pleadings was warranted on Simonton's failure to investigate grievances claim."); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) ("Moser's failure to process Burnside's medical treatment, food service, and commissary grievances, although not to be commended, does not rise to the level of a violation of a constitutional right."). Accordingly, the

Court will dismiss Bowen's claims against these Defendants for failure to state a plausible claim.

IV

For the foregoing reasons, the Court will grant Bowen leave to proceed *in forma pauperis*, dismiss his claims against LCJ with prejudice, dismiss his claims against Russell, Donate, Jarosz, and Knappenberger without prejudice, and permit his claims against PrimeCare, Mette, and Gonzalez to proceed at this time.

Bowen will be given the option of proceeding on his remaining claims or filing an amended complaint in the event he seeks to amend his claims against Russell, Donate, Jarosz, and Knappenberger.[6]  An appropriate Order follows, which provides further guidance.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**Gerald J. Pappert, J.**

---

[6] If Bowen files an amended complaint, his amended complaint must be a complete document that includes all of the bases for his claims, including claims that the Court has not yet dismissed if he seeks to proceed on those claims.  Claims that are not included in the amended complaint will not be considered part of this case.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).