IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NIGEL ANTHONY BOWEN, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-5534 |
| | : | |
| LEHIGH COUNTY JAIL, *et al.*, | : | |
| *Defendants.* | : | |

**MEMORANDUM**

**Pappert, J.**                                                                                          **January 29, 2025**

Plaintiff Nigel Anthony Bowen, a pretrial detainee currently incarcerated at the Lehigh County Jail ("LCJ"), brings this civil action pursuant to 42 U.S.C. § 1983 based on allegations that staff at LCJ failed to provide him with a diet consistent with his medical and religious needs. His Amended Complaint is pending before the Court for statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B). For the following reasons, the Court will dismiss Bowen's Amended Complaint because it is deficient.

I[1]

Bowen filed his initial Complaint against the following Defendants: (1) LCJ; (2) PrimeCare Medical Inc., the medical contractor at LCJ; (3) Cliff Knappenberger, identified as Investigator of Internal Affairs; (4) Janine Donate; (5) Kyle Russell; (6) Sarah Jarosz; (7) Douglas Mette, identified as a Treatment Supervisor; and (8) Carlos Gonzalez. (Compl. at 1.) He alleged that although he informed LCJ staff during intake that he is allergic to eggs and milk and suffers from diverticulitis, his meal trays

---

[1] The following allegations are taken from Bowen's Amended Complaint. (ECF No. 7.) The Court adopts the pagination supplied to the Amended Complaint by the CM/ECF docketing system.

1

regularly contained food that he could not consume, and that the issue was not resolved despite his numerous attempts to correct it by talking to the relevant LCJ staff and through the grievance process. (Compl. at 4.) After granting Bowen leave to proceed *in forma pauperis*, the Court screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Bowen v. Lehigh Cnty. Jail*, No. 24-5534, 2024 WL 4556060, at *1 (E.D. Pa. Oct. 23, 2024). The Court concluded that under a liberal construction of the Complaint, Bowen alleged an objectively serious deprivation for purposes of his constitutional claim, but that he had only adequately stated a plausible basis for a deliberate indifference claim against Defendants Mette (Supervisor for Treatment), Gonzalez (Food Service Director), and PrimeCare (medical contractor at LCJ). *Id.* at *4. The Court dismissed accordingly Bowen's remaining claims, but allowed him to amend his pleading. Bowen was informed that, if he filed an amended complaint, he was required to state all facts in support of his claims, including any claims that had not been dismissed. (ECF No. 6 at 3; *see also* ECF No. 5 at 11 n.6.)

Bowen returned with his pending Amended Complaint, which names the following Defendants: (1) LCJ; (2) PrimeCare Medical, Inc.; (3) Cliff Knappenberger, Internal Affairs Investigator; (4) Janine Donate; (5) Kyle Russell; (6) Correctional Officer Paulillo; (7) Corrections Officer Belo; (8) Sarah Jarosz, Deputy Warden of Treatment; (9) Douglas Mette, Treatment Supervisor; and (10) Carlos Gonzalez, Food Service Director.[2] (Am. Compl. at 2.) Bowen alleges that since June 2024, he has

---

[2] Approximately two weeks prior to filing his Amended Complaint, Bowen filed a new civil action that duplicated the instant case, and which the Court therefore dismissed without prejudice to Bowen proceeding in the instant case. *See Bowen v. Paulillo*, Civ. A. No. 24-5827 (E.D. Pa.). Because Bowen thereafter filed a status request suggesting possible confusion between the two cases, the Court sent Bowen a copy of all pleadings filed in both cases, told him that all allegations and claims must be presented in his operative pleading,

"constantly receiv[ed] meat on [his] neutral/meatless diet trays"[3] and has been given "excess amounts of cheese on trays as a protein replacement" even though he is on a "low-lac diet." (*Id.* at 8; *see also id.* at 16.) He contends that the "regular C.O.'s . . . see how [his] trays are always messed up" and that the kitchen "often" fails to correct the error. (*Id.* at 8.)

Bowen does not clearly describe the circumstances that required him to eat a modified diet, but alludes to the fact that he suffers from diverticulitis and that he is Rastafarian as the basis for his dietary restrictions. (*Id.* at 7.) He generally contends that the Defendants either ignored or failed to correct his attempts to receive trays that accommodate his religion and medical condition. (*Id.* at 6, 7.) As a result, Bowen claims that his First Amendment right to exercise his religion has been infringed because of meat on his trays and that his Equal Protection rights have been infringed because other inmates who receive meals without corn have not been asked to provide proof—apparently a reference to the fact that he was told to complete medical release forms so that LCJ staff could obtain records related to his diverticulitis—and because "if [he] were of Jewish beliefs and laws [he] would be given Kosher foods without incident." (*Id.* at 4; *see also id.* at 13.) He also claims that he has "lost weight rapidly,"

---

and gave him an opportunity to file a second amended complaint if his Amended Complaint was not comprehensive. (ECF No. 10.) Bowen was also informed that if he failed to respond to the Order, the Court would "treat Bowen's Amended Complaint (ECF No. 7) as the governing pleading in this case without regard to his allegations in any other pleading." (*Id.* at 6, ¶ 4.) Bowen did not respond to the Order, so the Amended Complaint remains the operative pleading in this case. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

[3] Bowen does not explain what a "neutral" diet requires.

3

his mental state has declined, and he has felt pain in his stomach where he previously had a flare up of diverticulitis. (*Id.* at 7.) As relief, he seeks damages and a vegan-style diet containing raw fruits and vegetables. (*Id.* at 8.)

Bowen attached to his Amended Complaint purported copies of sick call request forms and grievances. (*Id.* at 11-18.) Among those exhibits are forms Bowen submitted on October 23, 2024, in which he explained that he was not able to contact his primary care provider while incarcerated (apparently in relation to his "Diverticulitis status"), (*Id.* at 12), and on October 31, 2024, in which he claims he was supposed to receive a medical release form "pertaining to [his] diverticulitis diagnosis through my primary providers . . . along with other allergies," (*id.* at 13).[4] The response he received to his second request was that it had been "[t]asked for provider to review the records." (*Id.*)

Bowen also attached two grievances to his Amended Complaint, both of which appear to have been submitted to the Grievance Coordinator, Knappenberger. (*Id.* at 14-15.) In the first, submitted in August 2024, and which is difficult to read due to poor copy quality, Bowen said that he informed staff at LCJ of his diverticulitis diagnosis at the time of his admission and explained that his doctors provided him with a list of foods, including corn, that he cannot eat. (*Id.* at 14.) He further claimed that his meal trays contained foods he could not eat, even though he raised the issue with the treatment supervisor, the medical staff, and the kitchen staff. (*Id.*) The second grievance describes an incident on October 1, 2024, when Bowen claims he told

---

[4] In another sick call request, Bowen reported that he had become "extremely irritable" after being put on a certain medication. (Am. Compl. at 11.) The relevance, if any, of this exhibit to Bowen's claims is unclear.

4

Correctional Officer Paulillo that he received a tray with meat and was Rastafarian, but that Paulillo told him the tray was compliant with his diet. (*Id.* at 15.)

Finally, Bowen attached copies of staff requests to his Amended Complaint, which are dated October 17, 2024, and directed to "WARDEN." (*Id.* at 16-18.) In those requests, Bowen states that he continues to receive trays with egg products despite his allergies and trays with meat despite requiring a "neutral/meatless" diet that "closely falls in line with that of [his] Rastafarian faith." (*Id.*) He also reported losing twenty pounds during his incarceration at LCJ. (*Id.* at 18.)

II

As Bowen is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v.*

*Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court also construes Bowen's allegations liberally.  *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants."  *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims."  *Garrett*, 938 F.3d at 93 (citation omitted).  "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  *Id.* (internal quotations omitted).  The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits."  *Id.* at 94.

III

Bowen asserts his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[5] *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). A supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the

---

[5] There is no legal basis for claims against the LCJ because a jail is not a "person" under § 1983 and therefore is not subject to liability under the statute. *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009).

plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

To state a § 1983 claim against a municipal entity, a municipal employee in his official capacity, or a municipal contractor such as PrimeCare, a plaintiff must allege that the municipality or contractor's policy or custom caused the violation of his constitutional rights. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985 ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (cleaned up)); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). To allege an unconstitutional custom, a plaintiff must state facts from which it could be inferred that a decisionmaker acquiesced in a practice that essentially constitutes "standing operating procedure." *Bielevicz*, 915 F.3d at 850. A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

Prison officials have a constitutional duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). "[T]his duty includes an obligation to provide a medically appropriate diet when necessary." *Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016) (citing cases). In the context of an alleged failure to provide such a diet, "[u]nconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). To satisfy the subjective component of the analysis, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Additionally, under the First Amendment, prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law

shall prohibit the free exercise of religion.") (citations omitted). "[O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). There are four factors to consider in the *Turner* analysis:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it . . . . A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the rights that remain open to prison inmates . . . . A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally . . . . Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (alterations in original). The *Turner* analysis is equally applicable to equal protection claims in this context. *DeHart*, 227 F.3d at 61 ("DeHart cannot obtain relief if the difference between the defendants' treatment of him and their treatment of Jewish inmates is 'reasonably related to legitimate penological interests.'"); *Williams v. Sec'y PA Dep't of Corr.*, 541 F. App'x 236, 239-40 (3d Cir. 2013) (*per curiam*) ("Williams's free exercise and equal protection claims required him to prove that defendants' conduct was not 'reasonably related to legitimate penological interests' under the four factors set forth in *Turner*."). However, this analysis does not apply when a prisoner does not allege "that there is a prison policy impinging on his First Amendment rights." *Garraway v. Lappin*, 490 F. App'x 440, 445 (3d Cir. 2012) (*per curiam*). Additionally, "[i]n the prison context, a central First Amendment inquiry is 'whether the inmate has alternative means of practicing

his or her religion generally, not whether the inmate has alternative means of engaging in any particular practice.'" *Shelley v. Metzger*, 832 F. App'x 102, 104 (3d Cir. 2020) (*per curiam*) (quoting *Fraise v. Terhune*, 283 F.3d 506, 518 (3d Cir. 2002)).

Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), "'[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,' unless the government demonstrates that the burden is 'in furtherance of a compelling governmental interest" and is 'the least restrictive means of furthering that . . . interest.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (quoting 42 U.S.C. § 2000cc-1(a)). "For the purposes of RLUIPA, a substantial burden exists where:  1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280 (capitalization in original). "Requiring a prisoner to eat food forbidden by his religion's dietary regimen may 'substantially burden' one's religious practice and the cases generally indicate that prison administrators must provide an adequate diet without violating an inmate's religious dietary restrictions in order not to unconstitutionally burden free exercise rights." *Norwood v. Strada*, 249 F. App'x 269, 271 (3d Cir. 2007) (*per curiam*).

Bowen's Amended Complaint fails to state a claim because it is pled in a vague and disjointed manner and his allegations are too undeveloped. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Initially, the Amended Complaint alludes to several reasons why Bowen might require a modified diet, but his factual allegations do not describe or explain these reasons, and Bowen may not rely exclusively on exhibits as a basis for his claims. *See Berkery v. Credit Collection Servs.*, No. 21-3809, 2021 WL 4060454, at *2 (E.D. Pa. Sept. 7, 2021) ("While a court may consider exhibits attached to a complaint, merely attaching exhibits is insufficient to meet the requirement that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."); *see also Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."). For example, Bowen's exhibits refer to an egg (and possibly a lactose) allergy, but the Amended Complaint does not speak to Bowen's allergies, so it is not clear whether he is attempting to bring any claims based on having received foods to which he is allergic and, if so, which Defendants bear responsibility for failing to provide him with a diet that accommodates his allergies.

Additionally, Bowen's factual allegations fail to describe his diverticulitis or Rastafarian beliefs with any particularity, so it is unclear what type of diet Bowen claims is necessary to accommodate him. Although one of Bowen's exhibits alludes to a list of foods he cannot eat due to his diverticulitis, he does not provide the list of these

12

prohibited foods in the allegations of his Amended Complaint, so it is unclear what he is capable of eating and how frequently he received food trays that failed to comply with these dietary needs.  Likewise, although one could infer from context that Bowen's Rastafarian faith prevents him from eating meat, he does not say as much, describe the relevant tenet of his faith, nor allege sufficient facts supporting an inference that the food he was served prevented him from practicing his religion.  *See Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) (*per curiam*) ("Although he repeatedly alleged that he did not receive halal meals while at the BCJ, he did not allege that he was denied vegetarian meals or otherwise prevented from practicing his religion.  Without more, we agree with the District Court that Adekoya's allegation was insufficient to pass muster under *Iqbal*.").

     Bowen also fails to plead, with any particularity, how each Defendant was responsible for failing to accommodate his medical and/or religious dietary needs by, for example, noting the dates and circumstances of his interactions with each Defendant, describing the content of what he told each Defendant, and, if relevant, detailing their responses, actions, or inactions.  (*See* Am. Compl. at 7.)  This makes it difficult to discern how each Defendant was personally involved in the events giving rise to Bowen's claims and to trace each specific claim to the Defendant or Defendants allegedly responsible.[6]  Because of these defects, the Court cannot clearly discern the

---

[6] To the extent Bowen relies solely on a Defendant's failure to properly handle his grievance or a Defendant's high-level position as a basis for liability, such facts, without more, are an insufficient basis from which to infer personal involvement in a constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)); *Mincy v. Chmielsewski*, 508

contours of each of Bowen's claims or discern which claims are brought against any given Defendant. Accordingly, the Amended Complaint is too undeveloped and vague to state a claim to which the Defendants can appropriately respond.

IV

For the foregoing reasons, the Court will dismiss the Amended Complaint. Cognizant of Bowen's *pro se* status, the Court will grant him an opportunity to develop his allegations by explaining in a second amended complaint the "who, what, where, when and why" of his claims. *See Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019)). In any second amended complaint, Bowen must describe all of the facts that give rise to his claims by clearly explaining his beliefs and medical conditions that require him to eat a modified diet, clearly stating what he cannot eat and what type of diet accommodates his conditions and religion, explaining how the Defendants failed to accommodate those needs by providing specific information (including dates and the context of conversations) about how each Defendant was responsible for each of the alleged constitutional violations, and describing any harm he suffered as a result.

An appropriate Order follows, which provides further instruction on filing a second amended complaint.

---

F. App'x 99, 104 (3d Cir. 2013) (*per curiam*) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Simonton v. Tennis*, 437 F. App'x 60, 63 (3d Cir. 2011) (*per curiam*) ("The District Court correctly concluded that judgment on the pleadings was warranted on Simonton's failure to investigate grievances claim."). It appears that this may be the basis for Bowen's claims against Defendants Knappenberger, Donate, and Russell. Further, Bowen has not adequately alleged a policy or custom sufficient to state a *Monell* claim.

BY THE COURT:


*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**